the lease. We are therefore of the opinion that the improvement installed by the landlord herein was such an improvement as, under the terms of the lease, it became the duty of the tenant to make, and, in the event of his failure to do so, he was obligated to reimburse the landlord for the expense incurred by him in complying with such requirement of law.

The judgment must therefore be reversed, and judgment directed in favor of plaintiff for $142, with costs of appeal and in the court below. All concur.

(85 Misc. Rep. 385)

### BROADWAY BLDG. CO. v. MOORE FILTER CO.

(Supreme Court, Appellate Term, First Department. May 7, 1914.)

1. LANDLORD AND TENANT (§ 86*)—LEASES—RENEWAL—CONSTRUCTION.

Where a lease provided that at its expiration, and the expiration of each renewal term, it should be renewed for a further term, but that either party might cancel any renewal by giving notice four months before the expiration of the term, the lease was automatically renewed, unless such notice was given.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 270–275; Dec. Dig. § 86.*]

2. LANDLORD AND TENANT (§ 227*)—LEASES—CANCELLATION.

Where a tenant, whose lease required him to pay rent on the 1st day of each month, vacated the premises, and the new tenant did not go into possession for 10 days, there was no termination of the lease, under the provision that, in case the premises should be vacated, the landlord should be entitled to relet, and that upon a reletting the tenancy should cease, but that the tenant should pay the excess of the rent reserved over that paid by the new tenant; and hence an action begun before the expiration of the month was not premature.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 877, 878; Dec. Dig. § 227.*]

3. LANDLORD AND TENANT (§ 109*)—LEASES—TERMINATION.

Where a tenant, whose term had been renewed because of his failure to give timely notice of intent to terminate, left the premises before the commencement of the new term, pursuant to short notice, the act of the landlord in procuring another tenant, who did not take possession at once, did not operate as a surrender and acceptance, or waiver of notice, so as to discharge the old tenant from liability for rent in the interval.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 350–360, 363–365, 368–371; Dec. Dig. § 109.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by the Broadway Building Company against the Moore Filter Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued April term, 1914, before GUY, PAGE, and WHITAKER, JJ.

Frueauff & Robinson, of New York City (Watson B. Robinson and Robert S. Sloan, both of New York City, of counsel), for appellant.

Wilder, Ewen & Patterson, of New York City (John Ewen, of New York City, of counsel), for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

GUY, J.  The plaintiff corporation sues to recover from the defendant corporation rent for the month of May, 1913, alleged to be due under an alleged renewal of a written lease dated February 2, 1912, for the term of one year, to commence May 1, 1912, and end May 1, 1913.

[1] The ninth clause of said lease contains the following provision:

"It is distinctly understood and agreed that this lease and every renewal thereof shall be renewed for a further term of like duration as the aforesaid term; but either the landlord or the tenant may cancel any renewal hereof on giving to the other written notice of such cancellation on or before the 1st day of January next preceding the expiration of the then existing term."

By the eighth clause of the lease it is further provided that if and when the premises, or any part thereof, shall become unoccupied, then the landlord shall have the right to re-enter and take possession of the premises, "and thereupon the tenancy shall determine," and in such event the tenant shall pay to the landlord the excess of the amount of rent reserved, over the amount of rents which shall be received by the landlord during the residue of the unexpired term, "*which said excess shall be payable in monthly payments on the last day of each and every month.*"

The evidence shows that defendant paid all rent due under the lease up to May 1, 1913; that in March, 1913, it gave notice to plaintiff of its intention not to renew the lease, and that it intended to vacate the premises on April 30th; that plaintiff, in reply, advised the defendant that it would not accept a surrender of the premises; that, during the month of April, defendant asked plaintiff's permission to use the elevator to move out its furniture, which permission was granted; that, on April 30th, defendant vacated the premises, sent the keys to plaintiff, dropping them on the desk of one of plaintiff's employés; and that plaintiff, while retaining the keys, advised defendant that it would not accept a surrender of the premises. The evidence further shows that, prior to May 1st, the plaintiff entered into a lease of said premises with another lessee, to take effect May 1st, but that actual possession under said lease was not given to said lessee until May 10th.

It is contended by the defendant appellant that the provision of the ninth clause of the lease did not constitute an actual renewal leasing of the premises, but merely provided the terms on which such a renewal might be made.  It is clear, however, from the language of the ninth clause, that it did constitute a mutual agreement between landlord and tenant to renew the lease on the expiration of each year, unless notice should be given by either landlord or tenant, on or before January 1st of each pending year, of intention not to renew.  It is also contended by the defendant appellant that the making of the lease with another lessee in April was, first, a waiver of notice of nonrenewal; second, a surrender and acceptance; and, third, that in any event it operated under the eighth clause of the lease to terminate the lease, and that whatever sum might become due thereafter would only be for excess rent under the eighth clause of the

lease, which would not become due until the end of the month of May, and, as this action was commenced on May 2, 1913, it was prematurely brought.

[2] I am of the opinion that neither of these contentions on the part of the appellant are sound. Had the new lessee gone into possession on May 1st, it doubtless would have operated as a termination of the lease to defendant on that date, and would have relieved it of the obligation to pay rent on May 1st; but, as neither the landlord nor the new lessee went into possession until May 10th, whatever obligation toward the new lessee the plaintiff may have assumed could not affect either defendant's right of possession or its obligation to pay on the 1st day of May the rent for the ensuing month.

[3] In view of plaintiff's specific notice to defendant that it would not accept a surrender of the premises on April 30th, it is equally fallacious to claim that the making of a lease with another lessee prior to May 1st operated either as a surrender and acceptance or as a waiver of the time of giving notice, viz., before January 1, 1913. It was but a prudent effort, in the interest of defendant as well as of plaintiff, in view of defendant's announced determination to abandon the premises, for the landlord to use all reasonable diligence by the early letting of the premises, pursuant to the provision of the eighth clause of the lease, to minimize the amount of excess which defendant would be obliged to pay after abandonment of the premises. Defendant's obligation to pay rent accrued on the 1st day of May. It at that time had full right of possession; its offer of surrender had been rejected, and the placing of another tenant in possession on May 10th did not relieve it of its obligation to pay rent, but merely represented the basis of a counterclaim for such sum as was collected by plaintiff for the rent of said premises from May 10th to May 31st, amounting to $90.40, which, sum, though not counterclaimed, has been allowed by plaintiff and deducted from the amount of the judgment in this action.

The various exceptions taken to the admission or exclusion of evidence involve these same questions of law, and furnish no sufficient ground for reversal.

The judgment should therefore be affirmed, with costs. All concur.